# A R A N D I A  &  A R A N D I A
## ATTORNEYS AT LAW
### FOREST HILLS TOWER
### 118-35 QUEENS BLVD.
### SUITE 1201
### FOREST HILLS, NEW YORK 11375
### (718) 263-2100

•

### FACSIMILE: (718) 263-7274

February 2, 2011

718-254-6669
**By Telecopier and Email**
Carolyn Pokorny, Esq.
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Carolyn.pokorny@usdoj.gov

Re:   United States v Naira Jalovian
10-cr-584 (KAM)

Dear Ms. Pokorny:

I am writing in advance of the conference presently scheduled
for February 3, 2011 at 3p.m. before the Honorable Kiyo A.
Matsumoto to request that you provide the defense with the
information and any documentation which relates to the involvement /
role of Edward Herzog pursuant to the government's Brady and
discovery obligations as set forth in "Ogden Memorandum"
promulgated by the Attorney General of the United States in addition
to the other discovery provided to prior counsel as I have not been
able to obtain same.

## BACKGROUND

Naira Jalovian ("Jalovian") has been charged in a two count indictment. Count One charges Jalovian with Bribery of a Public Official in violation of 18 USC §201(b)(1)(A), 2 and 3551 et seq. The alleged bribery is predicated on consensually recorded conversations between "Ruben," an ICE agent acting in an undercover capacity, and Jalovian relating to Jalovian's purported desire to expand her activities in providing female escorts for purposes of prostitution.

As stated in the complaint, the investigation commenced "[i]n or about April, 2010, [when] ICE developed information that the defendant NAIRA JALOVIAN, also known as "Sandra" was operating a "high-end" prostitution ring that obtained much of its business through advertisements posted online at the website www.eros.com. The investigation showed that the business operates as follows. JALOVIAN and certain employees, who she refers to as "bookers," field calls from potential "clients" responding to the online advertisements. JALOVIAN and her bookers arrange meetings between the clients and JALOVIAN'S prostitutes for fees starting at several hundred dollars or more per sexual encounter. The prostitutes typically meet with clients at apartments JALOVIAN rents in midtown and other neighborhoods of Manhattan, New York. JALOVIAN herself lives in, and operates the ring from an apartment located in Jersey City, New Jersey and travels to Manhattan regularly to pick up the proceeds from her prostitution business."

3

Most significantly, the **initial consensually recorded conversation** was a **telephone call** on April 23, 2010 **from "Ruben" to Jalovian** on her private cell phone number which lasted more than one and one-half hours.

Quintessentially, "Ruben" introduced himself as a corrupt federal agent who is a friend of Tom's [Tom Raskin] who purportedly suggested that "Ruben" contact Jalovian to offer his assistance in Jalovian's prostitution business.  Throughout this call, "Ruben" repeatedly urged Jalovian to meet with him and repeatedly assured her that her concerns were unwarranted.  At the end of this conversation, despite "Ruben's" determined efforts, Jalovian remained noncommittal.

Immediately after hanging up, Jalovian telephoned **Edward Herzog ("Herzog")** to discuss the conversation with "Ruben." Herzog convinced Jalovian to meet with "Ruben" and vouched for "Ruben" since "Ruben" came from Tom, a well-known private investigator who was well-connected.

Following subsequent telephone conversations, on April 23, 2010, during which "Ruben" continued to assuage Jalovian's anxiety about meeting with him, Jalovian reluctantly agreed to meet with "Ruben."

Throughout the course of Jalovian's meetings with "Ruben," Jalovian was in regular communication by telephone and in person

4

with **Herzog.**  In fact, **Herzog** traveled to New York, at Jalovian's expense, to meet with Jalovian and presumably with Tom Raskin in furtherance of the plan to use "Ruben" as a means of expanding Jalovian's business.

The government has most recently advised the defense that there is no Tom Raskin[1] involved in this case and that **from the outset, Herzog has been acting as a confidential source ("CS").** It is beyond refute that Herzog provided the information about Jalovian's activities set forth at paragraph 4 of the Complaint.

Most importantly, it is Herzog who initiated the idea that Jalovian should expand her prostitution activities for their mutual financial benefit.  It is Herzog who initiated the idea that in order to achieve this goal, it would be necessary to eliminate the competition. It is Herzog who came up with the idea of having someone in law enforcement help by arresting competitors in advance of any expansion—"to clear the way."  It is Herzog who told Jalovian he (Herzog) would get someone that could be trusted through his (Herzog's) "close friend" Tom Raskin, knowing that Jalovian would be even more unwilling to meet an allegedly corrupt law enforcement agent whose bona fides came from Herzog.  Having set this entire plan in operation and being its prime mover, Herzog then arranged for "Ruben" to reach out for Jalovian.

---

[1] In fact, there is a Tom Raskin who is a licensed New York private investigator.  Raskin does know Herzog, but Raskin was totally unaware of Herzog's activities in this matter.

## LEGAL ARGUMENT

Based upon the foregoing, it is manifest that information regarding Herzog's role as a "CS"[2] is critical to Jalovian's defense and to legal argument of entrapment.

As stated in the Memoradum issued by David W. Ogden, Deputy Attorney General of the United States, dated January 4, 2010, "Department policy provides for broader disclosures of exculpatory and impeachment information than Brady and Giglio require.  See, USAM §9-5.001."  Prosecutors are required to "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." USAM §9-5.001.  In discussing the "[t]iming of disclosing, the Ogden Memorandum stated at page 10 that, "Exculpatory information, regardless of whether the information is memorialized, **must be disclosed** to the defendant reasonably promptly after discovery."  Emphasis added.

## CONCLUSION

Based upon the foregoing, it is requested that any and all information regarding Herzog and his participation in this matter, in whatever form, be provided forthwith.

Very truly yours,

_____/S/_____

OLGA ARANDIA

---

[2] It is not known, at present, whether Herzog was a confidential source ("CS") or a cooperator.

6

CC:   Anthony Capozzolo, Esq.
      Assistant United States Attorney
      By Email
      Anthony.capozzolo@usdoj.gov